IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DEBORAH ATHERTON,

    Petitioner,　　　　　　　　　　　OPINION AND ORDER

    v.　　　　　　　　　　　　　　　　　13-cv-454-wmc
　　　　　　　　　　　　　　　　　　　　　　　　12-cr-45-wmc
UNITED STATES OF AMERICA,

    Respondent.
_____

    Defendant Deborah Atherton has filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence that she received in United States v. Atherton, Case No. 12-cr-45-wmc. The government has filed a brief in opposition and Atherton has filed more than one brief in reply. After considering all of these submissions, as well as based on the underlying record as a whole, Atherton's motion will be denied for the reasons set forth briefly below.

## BACKGROUND

    Atherton was charged originally in United States v. Whiteagle et al., Case No. 11-cr-65-wmc, and accused along with co-defendants Timothy Whiteagle and Clarence Pettibone of bribery and conspiracy to commit bribery and to make false statements in violation of 18 U.S.C. §§ 666(a)(2) and (a)(1)(B), all in violation of 18 U.S.C. § 371. The facts underlying that conspiracy are set forth in United States v. Whiteagle, 2014 WL 3562716 (7th Cir. July 21, 2014) (No. 12-3554), and will not be repeated here. It is sufficient to note that Atherton was accused of helping Whiteagle bribe Pettibone, an

elected legislator for the Ho-Chunk Nation of Wisconsin.[1]  For money and valuables provided by Whiteagle and Atherton, Pettibone in turn helped three of Whiteagle's business clients obtain lucrative contracts with the Ho-Chunk Nation.

Ultimately, Atherton pled guilty in United States v. Atherton, Case No. 12-cr-45-wmc, to one count of an information alleging a conspiracy to make false statements to a credit union for the purpose of obtaining a mortgage loan in violation of 18 U.S.C. § 1014.  As the result of her guilty plea, the charges against Atherton in Case No. 11-cr-65-wmc were dismissed.  On October 10, 2012, the court sentenced Atherton to serve 50 months in prison, followed by a two-year term of supervised release.  She was also ordered to make restitution in the amount of $518,321.76.  Atherton's appeal of her conviction and sentencing was dismissed on January 2, 2013.  See United States v. Atherton, No. 12-3436 (7th Cir.).

In a motion filed on August 22, 2013, and a supplement filed July 16, 2015, Atherton contends that she is entitled to relief from her conviction and sentence because: (1) she was denied effective assistance of counsel in connection with her plea; (2) the charges against her were the result of prosecutorial misconduct, vindictive prosecution and selective prosecution; (3) the amount of restitution imposed was disproportionately high in comparison to the $162,854.00 that co-defendant Timothy Whiteagle was ordered to pay following his conviction on related charges, see United States v. Whiteagle, Case No. 11-cr-65-wmc (W.D. Wis. Oct. 25, 2012); and (4) the government lacked jurisdiction under the tribal exhaustion doctrine of the Ho-Chunk Nation Code of

---

[1] Ho-Chunk is a federally recognized Indian tribe headquartered in Black River Falls, Wisconsin.

Ethics. The government maintains that Atherton's ineffective-assistance claim is without merit and that her remaining grounds for relief are either barred from review or baseless.[2]

OPINION

A motion for relief under 28 U.S.C. § 2255 invokes "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 520 (7th Cir. 2007) (citing Kafo v. United States, 467 F.3d 1063, 1068 (7th Cir. 2006)). To obtain relief under § 2255, a prisoner must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack." Relief under § 2255 is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). Atherton's motion falls far short of this standard.

### I. Ineffective Assistance of Counsel — Guilty Plea

Atherton contends that she is entitled to relief pursuant to § 2255 because she was

---

[2] In an addendum to her motion, Atherton also lists several other grounds for relief, including: (1) "disparity of sentence," (2) "sexual misconduct" by an FBI agent, (3) "jurisdiction," and (4) "involuntary plea - - duress/pressure."(Dkt. 5, at p. 15). The court does not address these or other vague allegations made by Atherton in this case because she has failed to provide supporting facts as required by Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

denied effective assistance of counsel in connection with her guilty plea. Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail under this standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. See Williams v. Taylor, 529 U.S. 390, 390-91 (2000). To make an ineffective-assistance claim in the context of a guilty plea, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. See Bethel v. United States, 458 F.3d 711, 716-17 (7th Cir. 2006) (citing Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); Strickland, 466 U.S. at 687-88). Atherton can make neither showing here.

Atherton was represented in this case by Federal Public Defender Kelly A. Welsh. Claiming that Welsh had never "won" a case in eleven years as a Federal Public Defender, Atherton claims that she pled guilty because she lacked confidence in Welsh's ability to represent her at trial. Atherton alleges further that Welsh "pressured" her to plead guilty after co-defendant Clarence Pettibone entered a guilty plea to one count of the indictment against him.

Atherton's vague allegations of pressure are insufficient to demonstrate that her guilty plea was based on deficient advice or that it was improperly coerced. On the contrary, Attorney Welsh has an outstanding reputation for being well prepared, exercising good judgment, counselling her clients, and acting as an aggressive and

effective advocate for her clients. Even assuming a deficiency, Atherton does not establish the requisite prejudice. Indeed, Atherton does not allege that she would have pled not guilty absent her attorney's allegedly deficient advice or performance. To make that showing, a defendant "must do more than simply allege 'that [s]he would have insisted on going to trial'; [s]he must also come forward with objective evidence that [s]he would not have pled guilty." Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010) (quoting United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005)). Atherton provides no such objective evidence and the record discloses none. Indeed, the record as a whole suggests that Atherton would have been very poorly served by proceeding to trial, particularly given the overwhelming evidence of her involvement in other, even more serious crimes.

Moreover, at the plea hearing in this case, the court specifically asked Atherton whether anyone threatened her or forced her to plead guilty, to which she replied "No, sir." (Case No. 12-cr-45-wmc, Dkt. # 9, at 17.) Atherton acknowledged during the plea hearing that she understood the nature of the charges, the range of potential punishment, the plea agreement, the government's factual basis for the plea and the rights she was waiving, including the right to a jury trial. (Id. at 5-16). At sentencing, where Atherton was represented by a different Federal Public Defender (Erica Bierma), Atherton also acknowledged she "committed a crime" and that her misrepresentations caused harm. (Case No. 12-cr-45-wmc, Dkt. # 32, at 11). A defendant's solemn declarations, made under oath in open court, "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Adams, 746 F.3d 734, 746 (7th Cir.

2014) (citing Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986)). Atherton does not overcome that presumption here.

In addition to Atherton's sworn statements to the court, the record contains unsolicited e-mail correspondence and letters from Atherton admitting that she made false statements on a mortgage loan application that was used to purchase a residential property owned by David Pantoja, who lost all of the equity in his home as the result of Atherton's misrepresentations. (See Case No. 12-cr-45, dkts. # 20, # 33 and #34.) There is nothing in this record to suggest that Atherton's plea was coerced by her defense counsel's deficient advice, nor that but for her counsel's advice, she would have proceeded to trial. (Id.) Having failed to come forward with any credible evidence of a deficient performance by her counsel or actual prejudice, Atherton will not be allowed to proceed further with her claim of ineffective assistance of counsel in connection with her guilty plea.

## II. Claims of Prosecutorial Misconduct, Vindictive and Selective Prosecution

Atherton further alleges that the charges against her were the result of prosecutorial misconduct, vindictiveness and selectivity. In particular, Atherton points out that charges were filed against her after the government failed to obtain a conviction in a similar case against another individual (Craig Potts) in Minnesota. She also suggests without providing any details that the charges against her were the product of Clarence Pettibone's "scorned wife," Kris Pettibone. Finally, she observes that "only Indians" were indicted in Case No. 11-cr-65-wmc and that others guilty of engaging in similar conduct were not charged.

The government notes that all of these claims are barred by the doctrine of procedural default because Atherton could have pursued them on direct appeal and chose not to do so. When a defendant has procedurally defaulted a challenge by failing to raise error properly on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate (1) cause and prejudice or (2) that she is "actually innocent" of the crime of conviction. See Bousley v. United States, 523 U.S. 614, 622 (1998). In this instance, Atherton again does neither. Therefore, these claims are procedurally barred from review.

Alternatively, the government notes that Atherton's vague allegations do not demonstrate malicious, vindictive or selective prosecution in this instance. To demonstrate malicious or vindictive prosecution, a defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." United States v. Jarrett, 447 F.3d 520, 525 (7th Cir. 2006) (quoting United States v. Falcon, 347 F.3d 1000, 1004 (7th Cir. 2003) (citation omitted)). Likewise, a claim of selective prosecution requires a defendant show that she was "singled out for prosecution where others were not and that the selection was based on an impermissible ground, such as race or religion." United States v. Fletcher, 34 F.3d 395, 406-07 (7th Cir. 2011) (citations omitted). The evidence in this case neither supports a finding that the charges filed against Atherton were motivated by prosecutorial animus, nor that she was singled out for prosecution for any improper

reason.[3] Accordingly, Atherton fails to show that she is entitled to relief for this reason.

### III. Claims Concerning the Amount of Restitution

Atherton was also ordered to make restitution in the amount of $518,321.76 to compensate the victim for losses sustained as the result of Atherton's false statements. Atherton argues that the amount of restitution imposed was disproportionately high in comparison to the $162,854.00 that co-defendant Timothy Whiteagle was ordered to pay following his conviction. See United States v. Whiteagle, Case No. 11-cr-65-wmc (W.D. Wis. Oct. 25, 2012). Arguing that the court has imposed an improperly disparate sentence, Atherton seeks relief from the restitution order entered in her case.

As the government correctly notes, however, claims concerning restitution do not affect custody and, therefore, are not actionable in a motion filed pursuant to 28 U.S.C. § 2255. See Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997); see also Kaminski v. United States, 339 F.3d 84, 86-87 (2d Cir. 2003); Blaik v. United States, 161 F.3d 1341, 1342-43 (11th Cir. 1998); Smullen v. United States, 94 F.3d 20, 25-26 (1st Cir. 1996); United States v. Watroba, 56 F.3d 28, 29 (6th Cir. 1995); United States v. Segler, 37 F.3d 1131, 1136-37 (5th Cir. 1994); United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990). In other words, Atherton's attack on the restitution order does not state a cognizable claim for relief under § 2255. Even if it did, Atherton's attempt to compare her restitution amount, which is based on a distinct crime and loss to a separate victim, with that of her co-defendant, involving a different crime and victim, is baseless.

---

[3] The fact that the principal co-defendants in claims involving a fraud on the Ho-Chunk Nation were Indian is certainly not enough to raise an inference of impermissible grounds to prosecute.

>    IV.     **Tribal Exhaustion Doctrine**

Atherton recently submitted a supplement to her motion, arguing that the government did not have jurisdiction to prosecute her under the tribal exhaustion doctrine of the Ho-Chunk Nation's Code of Ethics. (Dkt. #21.) This is the first time Atherton has raised this issue, so she is procedurally barred from presenting this argument now. See Beasley, 523 U.S. at 622 (applying procedural bar for failing to raise available issues on direct absent showing (1) cause and prejudice, or (2) actual innocence.

Even if not barred, this argument still fails. The tribal exhaustion doctrine has been held to require "federal courts to defer to the tribal courts whenever federal and tribal courts have concurrent jurisdiction over a claim." Deborah F. Buckman, Construction and Application of Federal Tribal Exhaustion Doctrine, 186 A.L.R. Fed. 71 (2003). The Supreme Court has noted that "the criminal jurisdiction of the tribal courts is subject to substantial federal limitation." Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16 (1987) (citation omitted). Atherton has not provided any authority wherein the tribal exhaustion doctrine prohibited a federal criminal conviction, which makes sense given that only the federal government -- not the Ho-Chunk Nation -- can prosecute federal crimes. Even if such a limitation might apply in extreme cases, involving uniquely tribal matters, Atherton's straightforward fraud in the purchase of a home would not qualify.

>    V. **Certificate of Appealability**

Because none of Atherton's claims merit relief, her motion will be denied. Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a

certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. For the reasons stated, reasonable jurists would not debate the decision that defendant's motion should be denied because her claims are without merit. Therefore, no certificate of appealability will issue.

## ORDER

IT IS ORDERED that:

1. Defendant Deborah Atherton's motion to vacate, set aside or correct sentence is DENIED.

2. A certificate of appealability is also DENIED. Defendant may, if she wishes to do so, seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 19th day of October, 2015.

BY THE COURT:

/s/

_____
William M. Conley
District Judge